WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Inga K. McCord, | CV-14-2411-TUC-DCB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Pending before this Court is the Report and Recommendation (R&R) of Magistrate Judge Markovich, Plaintiff's Objections and Defendant's Response to Objections. After conducting a de novo review of the record, this Court will: adopt the Report and Recommendation, reverse the ruling of the Commissioner, and remand for an award of benefits.

The Court will adopt in its entirety the Magistrate Judge's thoroughly documented recitation of the procedural and factual history. (Doc. 20, 1- 34.)

**STANDARD OF REVIEW**

When objection is made to the findings and recommendation of a magistrate judge, the district court must conduct a de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

**OBJECTIONS**

**A.  Defendant objects to the R&R's re-weighing of conflicting evidence and the substitution of his judgment for that of the Commissioner**

Defendant objects to the R&R's contravention of this limited scope of review and the substitution of his judgment for that of the Commissioner. The R&R reweighed the evidence by noting the medical opinions in this case "somewhat contradict" the opinion of a treating physician, Dr. Bupp, but the opinions are "not entirely inconsistent" with that opinion. (Doc. 20 at 39.) The R&R also found fault with the Administrative Law Judge's (ALJ's) apparent failure "to acknowledge Dr. Bupp's OCD diagnosis," despite Plaintiff never having alleged her OCD was a severe impairment in the first place. (Doc. 29 at 40.) This "independent review" involves an improper substitution of judgment. Defendant objects to the R&R's determination that the ALJ "summarily dismissed" Dr. Bupp's opinion as "too restrictive and not supported by the objective evidence" because Plaintiff received "only modest treatment for depressed mood." (Doc. 20 at 39.) The ALJ did not summarily dismiss Dr. Bupp's opinion. Defendant objects to the R&R's claim that the "ALJ failed to consider any of the factors outlined in 20 C.F.R. §404.1527(c)." (Doc. 20 at 42.) To the contrary, the ALJ specifically stated in the hearing decision that "I have also considered opinion evidence in accordance with the requirements of 20 C.F.R. §404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 22.) Defendant objects to the R&R's determination that the ALJ's adverse credibility finding was erroneous. Here, the ALJ's interpretation of the evidence was reasonable and consistent with the regulations and circuit authority. Defendant objects to the R&R second-guessing of the ALJ's rationale.

- 2 -

1    Plaintiff responds that the Magistrate Judge was well-aware of the
2 substantial-evidence standard of review, including elements of that
3 standard the Commissioner alleges that he did not apply. (Doc. 20 at 35-
4 36 (citing 42 U.S.C. § 405(g) and numerous Ninth Circuit cases explaining
5 and applying the substantial-evidence standard of review).) Contrary to
6 the Commissioner's view that he did not understand § 405(g), the
7 Magistrate Judge understood that on substantial-evidence review a "'court
8 must consider the record as a whole, weighing both evidence that supports
9 and evidence that detracts from the Secretary's conclusion.'" (Doc. 20
10 at 35 (quoting *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir.
11 2001)).) Further, the Magistrate Judge's reference to his "independent
12 review" is a reference to his very responsibility to prepare a report and
13 recommendation.
14    In August 2009, treating psychiatrist Dr. Bupp opined that Plaintiff
15 was much more limited than the ALJ found. (AR. 405-06.) The Magistrate
16 Judge correctly recommended that the Court hold that the ALJ "erred in
17 failing to provide legally sufficient reasons for rejecting Dr. Bupp's
18 opinion." (Doc. 20 at 37.) The case at bar concerns a treating
19 specialist's opinion that the regulations expressly require giving "good
20 reasons" for rejecting, see 20 C.F.R. § 404.1527(c)(2) (201), and that
21 longstanding Circuit law requires clear-and-convincing (or specific-and-
22 legitimate) reasons for rejecting, see *Garrison v. Colvin*, 759 F.3d 995,
23 1012-13 & nn.10-11 (9th Cir. 2014). The Magistrate Judge relied on
24 Circuit treating-physician law and the regulations. (Doc. 20 at 37-39
25 (applying, e.g., Garrison, 759 F.3d at 1012).)  The Magistrate Judge
26 correctly recommended rejecting the Commissioner's baseless waiver
27 argument the ALJ failed to mention other physicians when rejecting Dr.
28

- 3 -

Bupp's opinions. (Doc. 20 at 39; Doc. 24 at 3-4.) The Magistrate Judge explained why the ALJ did not provide the required clear-and-convincing reasons to find Plaintiff not credible. (Doc. 20 at 42-49.)

The R&R correctly reasons that if the ALJ believed that Dr. Bupp's opinion was contradicted by the examining and consulting physician opinions, then the ALJ was required to give specific and legitimate reasons supported by substantial evidence for rejecting Dr. Bupp's opinion. The ALJ failed to meet this burden when she summarily rejected Dr. Bupp's opinion as "too restrictive and not supported by the objective evidence" and noted that  "received only modest treatment for depressed mood." (AR 21); *see Garrison*, 759 F.3d at 1012 ("The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Further, in noting that she accorded "less weight" to Dr. Bupp's opinion because it was too restrictive, the ALJ failed to address the factors set out in 20 C.F.R. 404.1527(c). Finally,  the ALJ erred in failing to consider Dr. Bupp's OCD diagnosis.

In sum, the ALJ's conclusory dismissal of Dr. Bupp's opinion as "too restrictive and not supported by the objective evidence" is wholly inadequate to meet the required standards of either clear and convincing reasons or specific and legitimate reasons supported by substantial evidence. (AR 21). In addition, the ALJ failed to consider any of the factors outlined in 20 C.F.R. 404.1527(c). The R&R properly found that the ALJ erred in rejecting Dr. Bupp's opinion and the ALJ failed to provide "legally sufficient reasons for rejecting" Dr. Gray's opinion.

- 4 -

**B. Defendant objects to the improper application of the credit-as-true rule to award benefits**

Defendant argues that multiple inconsistencies in the record preclude an immediate award of benefits. These different opinions underscore that the record is disputed in this case and remand is required to resolve these issues. Moreover, the R&R's conclusion that the ALJ's findings were inadequate or not sufficiently specific amounts to a concession that remand is the appropriate remedy. In light of the inconsistencies and conflicts in the record that require further administrative proceedings, this Court cannot proceed to the next question, whether the ALJ would be required to find Plaintiff disabled if Dr. Bupp's opinion and Plaintiff's testimony were credited as true.

In response, Plaintiff argues that an ALJ's failure to provide legally sufficient reasons for rejecting evidence does not automatically require a remand for readjudication, but instead is a condition precedent to finding the plaintiff disabled on the existing record. The Commissioner incorrectly argued that because the ALJ rendered an adverse credibility finding, a remand for readjudication is appropriate. (Doc. 24 at 7.) Just because an ALJ found a claimant not credible does not somehow mean that a remand for readjudication is required or warranted. The credit-as-true doctrine applies when a court holds that an ALJ does not provide clear-and-convincing reasons for finding a claimant not credible. While the Commissioner maintained that there are inconsistent medical opinions, the Commissioner did not present an argument that specific medical opinions provide clear-and-convincing reasons (or specific-and-legitimate reasons) for rejecting Dr. Bupp's opinions. (Doc. 24 at 6.) This is not a case when additional vocational-expert testimony

1  is needed to ascertain whether Plaintiff was disabled. The Magistrate
2  Judge recommends finding that Plaintiff was disabled because (1) the ALJ
3  did not provide clear-and-convincing reasons for rejecting the opinions
4  of a treating specialist and Plaintiff's statements and (2) after
5  applying the Circuit's test for the choice of judicial remedy in such
6  instance. In other words, those expert medical opinions improperly
7  rejected may be credited as true and may be the basis for a finding of
8  disability.

9      The Ninth Circuit recently reaffirmed the legal framework for a
10 finding of disability based on the credit-as-true rule. *Dominguez v.*
11 *Colvin*, 808 F.3d 403, 407-408 (9th Cir. 2015). Before a court can impose
12 such a remedy, there must be a determination of whether certain
13 prerequisites have been met. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th
14 Cir. 2014) (discussing *Garrison v. Colvin*, 759 F.3d 995(9th Cir. 2014)).
15 First, the court must first determine that the ALJ made a legal error,
16 such as failing to provide legally sufficient reasons for rejecting
17 evidence. *Dominguez*, 808 F.3d at 407. This threshold requirement is met
18 in this case if the conclusion is that the ALJ improperly rejected Dr.
19 Bupp's and Plaintiff's testimony. The court must then "assess whether
20 there are outstanding issues requiring resolution *before* considering
21 whether to hold that the claimant's testimony is credible as a matter of
22 law." *Treichler*, 775 F.3d at 1105. If such outstanding issues do exist,
23 the court cannot deem the erroneously disregarded testimony to be true;
24 rather, the court must remand for further proceedings. *Id.* at 1105-06.

25     This Court agrees with the R&R that the opinions of treating medical
26 experts were improperly disregarded and will credit them as true in this
27 instance. Two treating physicians opined, without contradiction and

after numerous objective clinical and diagnostic testing, that Plaintiff could not sustain work on a regular basis.

**Dr. Gray**

Plaintiff began treatment with Dr. Michael Gray in 2009 for evaluation and treatment of alleged mold exposure.

> On November 17, 2009 Plaintiff saw Dr. Gray and stated she could not exercise 2 days in a row without having significant fallout, and the same thing happens if she cleans her house 2 days in a row. (AR 512). She is unable to maintain a regular 40 hour work week without having significant increased sickness, and Dr. Gray noted her absences were consistent with her chronic fatigue immune dysfunction syndrome. Plaintiff stated she had joint pain in her hands, knees, and hips on an almost daily basis, and that is was not too severe and lasted 2-4 hours. Dr. Gray assessed: 1) fatigue; 2) restless leg syndrome; 3) insomnia; and 4) asthma, unspecified. (AR 514).
>
> On January 19, 2010 Dr. Gray saw Plaintiff and noted that she continued to be significantly impaired and had hired a housekeeper so she could get some exercise and not be fatigued all the time. (AR 509). Dr. Gray assessed toxic effect of nonmedicinal substance, and noted that she Plaintiff needed to return to the lab because they did not complete all of the tests. (AR 511).

(Doc. 20 at 6.)

> On March 29, 2011 Plaintiff saw Dr. Gray and reported she continued to be significantly impaired in her ability to engage in gainful employment, household chores, and other activities of daily living. (AR 487). She tried to take a college course but had to drop out because of her illness. She had been sick every other week recently and had taken several courses of antibiotics, and stopped taking her sequestering agents. She experienced moderate pain almost daily for 5-8 hours, had been sick 4 times in the last 2 months, and felt as though she was doing a lot worse. (AR 488). Dr. Gray noted that her labs from January showed her C4a level was in the normal range, but because of the break in treatment he would need to repeat labs because "these indirect markers of toxic load may well have increased." (AR 489). Dr. Gray made the same assessment as at the February 28, 2011 appointment, with the addition of toxic reaction.

(Doc. 20 at 8.) In a letter dated May 11, 2010 Dr. Gray noted that he was Plaintiff's treating physician for problems associated with excessive

- 7 -

fatigue, asthma, mycotoxicosis, recurrent and frequent urinary tract infections, insomnia, restless legs syndrome, arthritis, and headaches. (AR 446). He opined that she was "unable to engage in gainful employment as a result of the symptoms including excessive fatigue associated with her clinical condition." Dr. Gray further stated that Given the severity of her clinical condition, understanding that her condition does fluctuate at times but is also extremely unpredictable in terms of the onset of exacerbation of her symptoms, it is a reasonable medical certainty that Inga K Plaintiff is unable to engage in gainful employment and should be considered permanently impaired and totally disabled. On a Fatigue RFC Questionnaire, Dr. Gray reported that Plaintiff suffered from moderately severe fatigue (seriously affecting ability to function), and that her fatigue frequently interfered with her attention and concentration. (AR 664). Dr. Gray stated that Plaintiff experienced deficiencies of concentration, persistence, or pace often, and that she could not sustain work on a regular and continuing basis.

**Dr. Bupp**

Dr. Bupp has been Plaintiff's treating psychiatrist since January 1996. (AR 290).Dr. Bupp assessed major depressive disorder, recurrent, in partial remission; restless leg syndrome, moderate/severe; and obsessive compulsive disorder, moderate. Plaintiff saw Dr. Bupp on May 12, 2010 and reported she was only "ok" and had a series of depressions. (AR 480). He observed that she was alert and oriented, mood was only fair, affect was ok, and memory was intact. He assessed major depressive disorder, recurrent, in partial remission; restless leg syndrome, moderate; and mold titers increased. Dr. Bupp noted that depression, OCD, and aspergillosis had a combined effect on Plaintiff's functional

capacity, and that her limitations could be expected to last for 12 months or longer.

In addition, the testimony of Plaintiff was improperly discounted and will be credited as true, to substantiate the Court's finding of disability here.[1]

> Plaintiff testified at her hearing before the ALJ on July 18, 2011. She stated that she tries to walk her dog on a regular basis for exercise, and that she drives to town twice a week for grocery shopping. (AR 78). She traveled to Idaho to visit her brother several times after his wife died. (AR 78, 86). Plaintiff takes prescription medications for depression, anxiety, sleep, acid reflux, and asthma, plus a lot of vitamins and minerals, and Tylenol for restless legs and Advil for headaches. (AR 79). On examination by her attorney, Plaintiff stated that she forgets things more frequently than she did in the past, and that she had a "lack of ability to concentrate much diminished." (AR 89). She reported that if she tried to work as a programmer for several hours a day, she "would run out of mental capabilities in about 50 percent the time that I did ten years ago." Plaintiff stated that she took a lot of time off of work in 2007 because she was ill so frequently, and used up all of her sick and vacation time. If she tries to do housework for half a day, the next day she is mentally drained and feels incapable of balancing her checkbook, and her muscles ache badly. (AR 92–93). Plaintiff testified that some days she can do the household finances, but she doesn't attempt to on days when she is very fatigued. (AR 94). She was laid off of her job because she could not work a 40-hour week, and then she got a new job but could not work a full week because: "By about Wednesday I lost my ability to solve problems anymore. By Thursday I would be there, but I would really, really wish I could crawl under my desk and lie down so I lost all productivity at that point. Friday was typically just a nothing day." (AR 94–95).

(Doc. 20 at 27.)

The Court finds no outstanding material issues precluding resolution of disability at this time.

---

[1] In addition, the ALJ improperly failed to even mention the lay witness statement by Plaintiff's husband, which substantiates her testimony.

**CONCLUSION**

After correctly concluding that the ALJ did not provide clear-and-convincing reasons or specific-and-legitimate reasons for rejecting treating medical opinions and after concluding that the ALJ did not provide clear-and-convincing reasons for finding Plaintiff not credible, the Magistrate Judge reviewed Circuit law and correctly recommended that under that law, the proper judicial remedy in this case is a finding of disability and an award of benefits. (Doc. 20 at 49-51.)

Accordingly, after conducting a de novo review of the record,

**IT IS ORDERED** that the Report and Recommendation of Magistrate Judge Markovich is **ADOPTED** in its entirety.

**IT IS FURTHER ORDERED** that the ruling of the Commissioner is **REVERSED** and this matter is **REMANDED** for an award of benefits to the Plaintiff.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** and closed. The Clerk of this Court shall enter final judgment accordingly.

DATED this 19th day of May, 2016.

David C. Bury
United States District Judge

- 10 -